Lisa S. Kantor, Esq. State Bar No. 110678
  e-mail: lkantor@kantorlaw.net
Elizabeth K. Green, Esq. State Bar No. 199634
  e-mail: egreen@kantorlaw.net
KANTOR & KANTOR, LLP
19839 Nordhoff Street
Northridge, CA 91324
Telephone:  (818) 886-2525
Facsimile:  (818) 350-6272

Attorneys for Plaintiff,
VICTORIA D.

FILED
CLERK, U.S. DISTRICT COURT

AUG – 1 2013

CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

VICTORIA D.,

                 Plaintiff,

        v.

CONNECTICUT GENERAL LIFE
INSURANCE COMPANY,

                 Defendant.

Case No.:  CV13- 5563 JEM

**COMPLAINT FOR BREACH OF
THE EMPLOYEE RETIREMENT
INCOME SECURITY ACT OF 1974;
ENFORCEMENT AND
CLARIFICATION OF RIGHTS;
PREJUDGMENT AND
POSTJUDGMENT INTEREST;
ATTORNEYS' FEES AND COSTS**

Plaintiff, VICTORIA D., herein sets forth the allegations of her Complaint against Defendant CONNECTICUT GENERAL LIFE INSURANCE COMPANY.

## PRELIMINARY ALLEGATIONS

1.      Jurisdiction – This action is brought under 29 U.S.C. §§ 1132(a), (e), (f) and (g) of the Employee Retirement Income Security Act of 1974 (hereinafter "ERISA") as it involves a claim by Plaintiff for employee benefits under an employee benefit plan regulated and governed by ERISA.  Jurisdiction is predicated under these code sections as well as 28 U.S.C. § 1331 as this action involves a

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

federal question.  This action is brought for the purpose of obtaining benefits under the terms of an employee benefit plan, enforcing Plaintiff's rights under the terms of an employee benefit plan, and to clarify Plaintiff's rights to future benefits under the employee benefit plan.  Plaintiff seeks relief, including but not limited to: payment of benefits, prejudgment and post-judgment interest, and attorneys' fees and costs.

2.     Plaintiff Victoria D. (DOB 08/30/90) is and was at all relevant times a resident of Los Angeles County, California.  Thus, venue is proper in this judicial district pursuant to 29 U.S.C § 1132(e)(2).

3.     Plaintiff was at all relevant times a covered participant under a behavioral health benefit plan issued by Raymond James Financial, Inc. ("Raymond James" or "the Plan"), an employee welfare benefit plan regulated by ERISA .  The Plan provides behavioral health and mental health benefits which are funded through an insurance policy.  A true and correct copy of the Plan is attached hereto as Exhibit A.

4.     The behavioral health benefits under the Plan are insured by Defendant Connecticut General Life Insurance Company ("Cigna").  Plaintiff is informed and believes that Cigna is a corporation with its principal place of business in the State of Connecticut, authorized to transact and transacting business in this judicial district, the Central District of California, and can be found in the Central District of California.

5.     The behavioral health benefits under the Plan were administered by ComPsych Corporation ("ComPsych").

## FIRST CAUSE OF ACTION
## FOR DENIAL OF PLAN BENEFITS UNDER ERISA

6.     Plaintiff incorporates by reference paragraphs 1 through 5 as though fully set forth herein.

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

7.     Plaintiff is a 23-year old young woman who suffers from bulimia nervosa and major depressive disorder, severe mental illnesses defined under California state law (Cal. Ins. Code § 10144.5(d)) and the Federal Mental Health Parity and Addiction Equity Act of 2008 (hereinafter "MHPAEA").

7.     Plaintiff's mental illnesses began when she was just 12 years old. Plaintiff has received outpatient therapy and inpatient psychiatric treatment for her mental illnesses.

8.     On October 22, 2011, Plaintiff was admitted to Monte Nido Vista, a residential treatment facility in Los Angeles County, California, for treatment of her eating disorder.

9.     On or about October 20, 2011, Monte Nido Vista contacted ComPsych, the Plan's claims administrator, by telephone and requested pre-authorization for benefits for Plaintiff's residential treatment.  ComPsych denied authorization, claiming residential benefits were not covered under the Plan.

10.    On February 1, 2012, ComPsych wrote a letter denying benefits for Plaintiff's treatment on the basis that: "Benefit plan does not allow coverage for residential treatment."

11.    On February 17, 2012, Plaintiff completed treatment and discharged from Monte Nido Vista.  Plaintiff incurred the entire cost of her treatment at Monte Nido Vista.

12.    On July 30, 2012, Plaintiff timely appealed the denial of benefits.

13.    On March 21, 2013, the Plan wrote a letter denying the appeal.  The Trustee wrote that the Plan does not provide coverage for out-of-network services and the benefits requested were for out-of-network services.  The Trustee also claimed that Plaintiff did not receive precertification for the benefits.

14.    Defendant wrongfully denied Plaintiff's claim for benefits, in the following respects, among others:

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

(a)     Violation of the Federal Mental Health Parity Act ("MHPAEA") which requires that any group health plan, issued on or after October 1, 2009 and which provides mental health coverage, must ensure that "the treatment limitations" applicable to mental health coverage "are no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits." Subd. (a)(3)(A)(iii). The statute's definition of "mental health" includes bulimia nervosa and major depressive disorder. The statute defines "treatment limitation" as including "limits on the frequency of treatment, number of visits, day of coverage or other similar limits on the scope or duration of treatment." Subd. (a)(3)(B)(iii). The MHPAEA requires that a group health plan not "impose a non-quantitative treatment limitation with respect to mental health or substance use disorder benefits in any classification unless, under the terms of the plan as written and in operation, any processes, strategies, evidentiary standards, or other factors used in applying the non-quantitative treatment limitation to mental health or substance use disorder benefits in the classification are comparable to, and are applied no more stringently than, the processes, strategies, evidentiary standards, or other factors used in applying the limitation with respect to medical surgical/benefits in the classification, except to the extent that recognized clinically appropriate standards of care may permit a difference." A health care service plan must also allow the same pre-certification requirements for out-of-network providers of mental health services and out-of-network providers of medical/surgical services.

The Plan providing Plaintiff's coverage provides skilled nursing care as a classification of medical/surgical benefits. However, it does *not* provide residential treatment as a classification of mental health benefits. This is an improper limit on the setting in which treatment is offered to mental health patients under the Federal Mental Health Parity Act, because skilled nursing

4

is a "classification" or "type of setting" which is offered as a medical surgical benefit but its analogue on the mental health side, residential treatment, is not offered;

(b)     Violation of applicable state mental health parity law(s) which require mental health benefits to be comparable to benefits for physical illnesses.  The Plan provides medical/surgical benefits at a skilled nursing facility, rehabilitation hospital or sub-acute facility but fails to provide comparable benefits for mental health treatment at specialized mental health facilities, such as residential treatment facilities;

(c)     Failure to pay medical benefit payments due to Plaintiff at a time when Defendant knew, or should have known, that Plaintiff was entitled to those benefits under the terms of the Plan;

(d)     Failure to provide reasonable explanations of the bases relied on under the terms of the Plan documents, in relation to the applicable facts, laws and Plan provisions, for the denial of the claims for medical benefits;

(e)     Failure to promptly provide claims and appeals decisions within applicable time limits required by ERISA and the Plan; and

(f)     Failure to properly and adequately investigate the merits of the claims.

15.     Plaintiff is informed and believes and thereon alleges that Defendant wrongfully denied the claims for benefits by other acts or omissions of which Plaintiff is presently unaware, but which may be discovered in this litigation and which Plaintiff will immediately make Defendant aware of once said acts or omissions are discovered by Plaintiff.

16.     Following the denial of the claims for benefits under the Plan, Plaintiff exhausted all administrative remedies required under ERISA, and performed all duties and obligations on her part to be performed.

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

17.     As a proximate result of the denial of medical benefits, Plaintiff has been damaged in the amount of all of the medical bills incurred for the treatment, in the amount of approximately $172,000.00.

18.     As a further direct and proximate result of this improper determination regarding the medical claims, Plaintiff, in pursuing this action, has been required to incur attorney's costs and fees.  Pursuant to 29 U.S.C § 1132(g)(1), Plaintiff is entitled to have such fees and costs paid by Defendant.

19.     Due to the wrongful conduct of Defendant, Plaintiff is entitled to enforce her rights under the terms of the Plan and to clarify her rights to future benefits under the terms of the Plan.

## SECOND CAUSE OF ACTION AGAINST
## FOR EQUITABLE RELIEF

20.     Plaintiff refers to and incorporates by reference paragraphs 1 through 19 as though fully set forth herein.

21.     As a direct and proximate result of the failure of the Defendant to pay claims for medical benefits, and the resulting injuries and damages sustained by Plaintiff as alleged herein, Plaintiff is entitled to and hereby requests that this Court grant Plaintiff the following relief pursuant to 29 U.S.C. § 1132(a)(1)(B):

(a)     Restitution of all past benefits due to Plaintiff, plus prejudgment and post-judgment interest at the lawful rate; and

(b)     Such other and further relief as the Court deems necessary and proper to protect the interests of Plaintiff under the Plan.

## REQUEST FOR RELIEF

Wherefore, Plaintiff prays for judgment against Defendant as follows:

1.     Payment of health benefits due to Plaintiff under the Plan;

2.     Pursuant to 29 U.S.C. § 1132(g), payment of all costs and attorneys'

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

1   fees incurred in pursuing this action;

2       3.     Payment of prejudgment and post-judgment interest as allowed for

3   under ERISA; and

4       4.     For such other and further relief as the Court deems just and proper.

5

6

7   Dated:  August 1, 2013                  KANTOR & KANTOR LLP

8

9                            By: _____

10                              Lisa S. Kantor

11                              Elizabeth K. Green
                                 Attorneys for Plaintiff,

12                              Victoria D.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

7

ERISA COMPLAINT

# EXHIBIT A

# Summary Plan Description
# for the
# Raymond James Financial, Inc.
# Welfare Plan

**Effective:  April 1, 2010**

## TABLE OF CONTENTS

Page

Introduction ............................................................................................................. 1

Eligibility ................................................................................................................. 1

    COBRA Continuation Coverage ........................................................................ 1

    Military Leave .................................................................................................. 3

    Mid-Year Election Changes ............................................................................... 3

    Coverage for Dependent Students ..................................................................... 3

    Family and Medical Leave Act .......................................................................... 4

Enrollment .............................................................................................................. 5

    Initial Enrollment ............................................................................................ 5

    Special Enrollment ........................................................................................... 5

    Qualified Medical Child Support Orders .......................................................... 6

    Medicaid ......................................................................................................... 6

Benefits ................................................................................................................... 6

    Newborns' and Mothers' Health Protection Act ............................................... 6

    Women's Health and Cancer Rights Act ........................................................... 6

    General Pre-Existing Condition Exclusions ...................................................... 7

    Procedures for Requesting Certificate of Creditable Coverage .......................... 7

Claims Procedures ................................................................................................... 7

    Federal Notification Timeframes for Claims for Group Health Plan Benefits ......... 7

    Federal Notification Timeframes for ERISA Disability Benefit Claims .............. 9

    Federal Notification Timeframes for Other ERISA Benefit Claims ................... 10

    Exhausting Claims and Appeal Procedures ..................................................... 10

Third-Party Claims (Subrogation) ........................................................................... 11

Rights Of Participants ............................................................................................ 12

    Receive Information About Your Plan and Benefits ........................................ 12

    Continue Group Health Plan Coverage ............................................................ 12

    Prudent Actions by Plan Fiduciaries ................................................................ 12

    Enforce Your Rights .......................................................................................... 13

    Assistance With Your Questions ....................................................................... 13

HIPAA Notice of Privacy Practices ......................................................................... 14

Additional Information About The Plan .................................................................. 21

    Amendment and Termination of the Plan. ....................................................... 21

    Limitations on Rights of Participants. ............................................................... 21

    Plan Name. ......................................................................................................... 21

    Type of Plan. ...................................................................................................... 21

    Plan Year. ........................................................................................................... 21

    Plan Sponsor and Identification Number of Employer Which Maintains the
        Plan. ............................................................................................................. 21

    Plan Number. ..................................................................................................... 21

    Type of Administration and Funding. ............................................................... 21

    Plan Administrator. ............................................................................................ 21

    COBRA Administrator. ...................................................................................... 22

    Agent for Service of Legal Process. .................................................................. 22

    Employer Whose Employees are Covered by the Plan. ..................................... 22

# SUMMARY OF THE PLAN

## Introduction

This document is a brief description of the Raymond James Financial, Inc. Welfare Plan (the "Plan"). The Plan offers medical, prescription drug, dental and vision benefits; behavioral health and employee assistance program (EAP) benefits; accidental death and dismemberment (AD&D) insurance benefits; life insurance benefits; long-term disability benefits; business travel accident insurance benefits; and long-term care insurance benefits. Some of these benefits are provided pursuant to insurance policies ("insured benefits"), and some benefits are self-insured, meaning the Plan does not purchase insurance to pay benefits ("self-funded benefits"). The Plan also provides you with a way to pay for certain benefits on a pre-tax basis.

This Summary Plan Description, together with the descriptions, policies and contracts prepared by insurance carriers, and the benefit description booklets (collectively, "Benefit Descriptions") distributed with and as part of this Summary Plan Description, describes the Plan in effect as of April 1, 2010.

As used in this Summary Plan Description, any capitalized terms, not otherwise defined herein, will have the same meanings given to such terms in the Benefit Descriptions unless the context requires otherwise. With regard to any self-funded benefit offered under the Plan, in the event of an inconsistency between the provisions of this document and the official Plan document, the official Plan document will control. With regard to any insured benefit offered under the Plan, in the event of an inconsistency between the provisions of this document and an insurance contract or a certificate of insurance that governs a particular benefit, the insurance contract or certificate of insurance will control.

## Eligibility

To be eligible to participate in the Plan, Employees must work at least 25 hours per week for Raymond James Financial, Inc. or another participating employer. Employees are eligible on the first or sixteenth day of the month immediately following 30 days of employment. If an Employee is rehired, he or she is treated as a new Employee for eligibility purposes.

See the Benefit Descriptions for more information about eligibility for Employees and their Dependents and when coverage ends.

### COBRA Continuation Coverage

As a result of the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), the Plan offers continuation coverage at group rates for group health benefits that are part of the Plan in certain instances where your coverage under the Plan would otherwise end.

As an Employee, you may choose this continuation coverage if you lose your group health coverage because of a reduction of your hours of employment or the termination of your employment (for reasons other than gross misconduct on your part). Your spouse may choose COBRA if he or she

1

loses coverage due to your death; the termination of your employment (other than for gross misconduct) or a reduction in your hours of employment; a divorce or legal separation; or your becoming entitled to Medicare benefits. Your Dependent child may choose COBRA if coverage is lost for any of the reasons above, or if the Dependent ceases to be an eligible Dependent under the Plan.

You or a family member has the responsibility to inform the Plan Administrator (see "Additional Information" in this Summary for contact information) of a divorce, legal separation, or a child losing Dependent status under the group health plan within 60 days of the event which caused the loss of coverage. If you fail to give this notice, you will not be eligible to elect continuation coverage.

When the COBRA Administrator is notified of a qualifying event, the individual losing coverage will be notified of his right to choose continuation coverage. Election for continuation coverage must be made within 60 days of the later of (a) the date your regular coverage ends or (b) the date you receive notice of your right to elect continuation coverage. If continuation coverage is not elected, group health benefits will cease according to regular Plan provisions. If elected, you will be required to pay 102% cost of the continuation coverage. The first premium is due within forty-five (45) days of the date you make the initial election for continuation coverage.

A child born to, adopted by, or placed for adoption with a covered Employee during a period of COBRA coverage is eligible for COBRA coverage provided that, if the covered Employee is a qualified beneficiary, the covered Employee has elected COBRA coverage for himself or herself. The child's COBRA coverage begins when the child is enrolled in the Plan, whether through special enrollment or open enrollment, and it lasts for as long as COBRA coverage lasts for other family members of the Employee. To be enrolled in the Plan, the child must satisfy the otherwise applicable Plan eligibility requirements.

Once elected, coverage for Employees who continue coverage under this provision due to termination of employment or a reduction in hours will continue for a maximum of 18 months. Dependent coverage may also continue under these circumstances for a maximum of 18 months. Coverage for Dependents may continue for a maximum of 36 months if continuation coverage is elected due to any of the following events: divorce, legal separation, death of the employee, cessation of a child's qualification under the Plan as a Dependent, or the Employee's entitlement to Medicare. If the first qualifying event was a termination of employment or reduction in hours, and during the original 18-month period, a subsequent qualifying event occurs, COBRA beneficiaries (with the exception of the covered Employee) can extend continuation coverage for up to a total of 36 months from the date coverage was originally lost.

COBRA beneficiaries who are determined to be disabled for Social Security purposes at any time during the initial 60 days of the continuation coverage period must notify the COBRA Administrator (within the initial 18 months of COBRA continuation coverage) of such disablement in order to extend the continued coverage from 18 to 29 months for themselves and other qualified beneficiaries in their family unit. This notification must be provided before the end of the original 18-month period of continuation coverage and within 60 days after the later of the Social Security disability determination date or the date of the COBRA qualifying event. Under the law, the Plan is

2

entitled to charge an increased premium for the additional 11-month period equal to 150% of the otherwise applicable premium for continuation coverage.

This section does not fully describe COBRA coverage. For additional information, refer to the applicable group health plan Benefit Description or contact the COBRA Administrator listed at the end of this Summary.

**Military Leave**

If you are absent from work due to service in the uniformed services, as defined in the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), you and your eligible dependents may be eligible to continue health coverage under the Plan for up to 24 months. Contact the Plan Administrator for more information covering your rights and benefits under USERRA.

**Mid-Year Election Changes**

Any change during the year to your coverage or the coverage of your eligible Dependents that affects your payroll withholding amount must be in compliance with the Raymond James Financial, Inc. Cafeteria Plan.

**Coverage for Dependent Students**

Under Michelle's Law, a medical plan must allow a Dependent child who is a seriously ill or injured student of a post-secondary educational institution to continue coverage for up to one year if he or she is on a medically necessary leave of absence or experiences a change in college enrollment resulting from that serious illness or injury.

In order to be eligible for the extended coverage:

- the child must be covered under your group health plan coverage option immediately before the leave of absence or change in enrollment by reason of being a student at a post-secondary educational institution; and
- the leave or change in enrollment must be medically necessary, must commence when the child is suffering from a serious illness or injury, and must cause the child to lose student status for purposes of coverage under the terms of the group health plan.

Coverage for the Dependent child will not terminate until the earlier of (i) one year after the first day of the medically necessary leave of absence or (ii) the date the coverage would otherwise terminate under the terms of the Plan. Accordingly, if you are asked to provide evidence of a Dependent child's full-time student status, and your Dependent child has lost student status due to the circumstances described above, you will be required to provide a written certification from your dependent child's treating physician in lieu of providing the evidence of student status.

The extension of coverage is not available for vision or dental benefits.

3

**Family and Medical Leave Act**

If you are on a personal leave under the Family and Medical Leave Act of 1993 ("FMLA"), you and your eligible Dependents may continue health coverage (medical, dental, prescription drug, behavioral health, vision, EAP and health FSA benefits) under the Plan during your approved leave (under the same terms as other participants who are actively at work).  If you choose not to continue your or your Dependent's coverage during a personal leave under FMLA, coverage for you and your eligible Dependents will be automatically reinstated, without providing evidence of good health, if you return to active employment immediately following the end of your leave.  Any waiting periods will not apply.  If you do not return to active employment following your personal leave under FMLA, coverage for you and your Dependents will end on the date your FMLA leave ends, and you may elect continuation coverage as described in the applicable Benefit Description.  If you subsequently return to employment at Raymond James Financial, Inc. or a participating employer, you must again satisfy the requirements for participation following your re-employment.

If you continue your and your Dependent's coverage during a personal leave under FMLA, you may make your share of the premium payments in accordance with the Benefit Description or your employer's FMLA policy.  Contact your Plan Administrator for additional information.

Your entitlement to benefits other than group health benefits during a period of FMLA leave is determined by your employer's established policy for providing such benefits when you are on other forms of leave.

4

## Enrollment

### Initial Enrollment

When you first become eligible to participate in the Plan, you must complete any required enrollment form(s) and return the form(s) to the Plan Administrator or its designee in accordance with the rules established by the Plan Administrator. If you or a Dependent decline coverage when initially eligible, you may not elect coverage until the next open enrollment period, unless you are entitled to a special enrollment, as described below.

### Special Enrollment.

If you do not enroll for group health benefits when first eligible or during any Plan open enrollment period, you may be able elect coverage under the special enrollment rules.

If you have a new Dependent as a result of marriage, birth, adoption or placement for adoption, you may enroll yourself (if not currently enrolled) and your Dependents, provided you and your Dependents are otherwise eligible, by requesting enrollment within 30 days after the marriage, birth, adoption or placement for adoption. Refer to the applicable Benefit Description to determine when coverage will become effective. If you do not enroll the newly acquired Dependent within the 30-day period, you or your Dependent will not be eligible to enroll until the next enrollment opportunity available under the Plan.

If you do not enroll in the Plan because of other health insurance or group health coverage, you may in the future be able to enroll yourself and your Dependents, provided you and your Dependents are otherwise eligible, after your other coverage ends or if the contributing employer stops contributing toward the cost of your other coverage. You must request this special enrollment period within 30 days after your other coverage ends or after the employer stops contributing toward the other coverage.

This Plan also permits a special enrollment opportunity if you or your Dependents who are eligible for coverage under the terms of a benefit program but are not enrolled either:

- lose Medicaid or Children's Health Insurance Program (CHIP) coverage because you or your Dependents are no longer eligible for that coverage, or
- become eligible for a state's premium assistance program, with respect to coverage under this Plan, under Medicaid or CHIP.

For these enrollment opportunities, you will have 60 days – instead of 30 – from the date of either the termination of Medicaid/CHIP coverage, or the date of determination of eligibility for premium assistance, to request enrollment. Note that this 60-day extension doesn't apply to enrollment opportunities other than the Medicaid/CHIP changes described herein.

5

**Qualified Medical Child Support Orders**

If required by a qualified medical child support order ("QMCSO"), you and/or an eligible Dependent will be enrolled in group health coverage under this Plan in accordance with the terms of the order. Any required premiums will be deducted from your compensation. Upon request, you may obtain, without charge, a copy of the Plan's procedures governing QMCSO determinations.

**Medicaid**

Payment of benefits will be made in accordance with any assignment of rights made by or on behalf of you or an eligible Dependent under the Plan as required by Medicaid. In addition, in enrolling an individual or eligible Dependent or in determining or making any payments for benefits, the fact that the individual is eligible for or is provided benefits through Medicaid will not be taken into account.

# Benefits

A complete description of the benefits provided by the Plan can be found in the attached Benefit Descriptions. This section describes some of the federal protections available to you and your Dependents covered under the Plan.

**Newborns' and Mothers' Health Protection Act**

In providing medical coverage, the Plan generally may not restrict benefits for any hospital length of stay in connection with childbirth for the mother or newborn child to less than 48 hours following a vaginal delivery, or less than 96 hours following a cesarean section, or require that a provider obtain authorization from the Plan or the insurer for prescribing a length of stay not in excess of the above periods. However, federal law generally does not prohibit the mother's or newborn's provider, after consulting with the mother, from discharging the mother or her newborn earlier than 48 or 96 hours, as applicable.

**Women's Health and Cancer Rights Act**

If you have had or are going to have a mastectomy and you are covered under a group health plan benefit under this Plan, you may be entitled to certain benefits under the Women's Health and Cancer Rights Act of 1998 (WHCRA). For individuals receiving mastectomy-related benefits, coverage will be provided in a manner determined in consultation with the attending physician and the patient, for:

- all stages of reconstruction of the breast on which the mastectomy was performed;
- surgery and reconstruction of the other breast to produce a symmetrical appearance;
- prostheses; and
- treatment of physical complications of the mastectomy, including lymphedema.

These benefits will be provided subject to the same deductibles and coinsurance applicable to your other medical and surgical benefits provided under this Plan.

6

### General Pre-Existing Condition Exclusions

Check the Benefit Description for your medical plan to determine whether your coverage imposes a pre-existing condition exclusion on medical benefits. If so, if you have a medical condition before coming to the Plan, you might have to wait a certain period of time before the Plan will provide coverage for that condition. However, any waiting period is reduced by the period of creditable coverage (coverage under another health plan) that you have. Refer to your Benefit Description for details.

### Procedures for Requesting Certificate of Creditable Coverage

The Health Insurance Portability and Accountability Act of 1996 requires the Plan to provide a certificate of creditable coverage for certain types of health benefits to each individual who requests one so long as the certificate is requested while the individual is covered under a group health benefit under the Plan or within 24 months after the individual's coverage under the Plan ends. An individual is entitled to receive a certificate upon request even if the Plan has previously issued a certificate to that individual.

Requests for a certificate of creditable coverage should be directed to the insurer or other party identified in the Benefit Description for your group health benefits. You may also contact the Plan Administrator.

## Claims Procedures

The procedures governing claims for benefits and appeal procedures are furnished automatically, without charge, as a separate document, either in the applicable Benefit Description, or if not described in the Benefit Description, as a stand-alone document.

Although you will find details about how to file claims and appeals in the Benefit Descriptions or stand-alone claims procedure documents, in the event claims procedures do not specify the timeframes in which claims and appeals will be decided, the applicable federal timeframes for benefits that are subject to ERISA are set forth below.

### Federal Notification Timeframes for Claims for Group Health Plan Benefits

The Claims Administrator will notify the claimant of the decision on a properly filed claim within the following time periods, depending on how the claim is classified by the Claims Administrator:

Urgent Care Claim – An Urgent Care Claim is a claim for care or treatment in which failure to make a decision within a short period of time could seriously jeopardize life, health or ability to regain maximum function or, in the opinion of the claimant's physician, would result in severe pain which cannot be adequately managed without the care or treatment.

The Claims Administrator will notify the claimant of the decision on an urgent care claim as soon as possible in light of medical demands, but no later than 72 hours after receipt of the claim, unless the claimant has failed to submit information required to determine whether benefits are covered or payable. In that case, the Claims Administrator will then notify the claimant of the decision as soon

7

as possible but no later than 24 hours after receipt of the claim. The claimant will have a reasonable period of time, but not less than 48 hours, to provide the information. The Claims Administrator will then notify the claimant of the decision as soon as possible, but no later than 48 hours after receiving the information or, if earlier, the deadline established by the Claims Administrator for providing it.

Pre-Service Claim – A pre-service claim is a claim that requires approval, in whole or in part, before the claimant obtains care or treatment (such as preadmission certification for hospitalization or prior authorization for specialist services).

The Claims Administrator will notify the claimant of the decision on a pre-service claim within a reasonable period of time appropriate to the medical circumstances, but no later than 15 days after receipt of the claim. In case of special circumstances beyond the control of the Claims Administrator, this period may be extended for up to 15 days. If an extension is needed, the claimant will be notified before the end of the first 15-day period why the extension is needed and when a decision is expected. If such an extension is necessary due to a failure of the claimant to submit the information necessary to decide the claim, the notice of extension shall specifically describe the required information, and the claimant shall be afforded at least 45 days from receipt of the notice within which to provide the specified information.

Post-Service Claim – A post-service claim is a claim that does not require approval before the claimant obtains care or treatment (that is, for reimbursement after services have been rendered).

If the post-service claim is denied in whole or in part, the Claims Administrator will notify the claimant within a reasonable period of time, but no later than 30 days after receipt of the claim. In case of special circumstances beyond the control of the Claims Administrator, this period may be extended for up to 15 days. If an extension is needed, the claimant will be notified before the end of the 30-day period why the extension is needed and when a decision is expected. If such an extension is necessary due to a failure of the claimant to submit the information necessary to decide the claim, the notice of extension shall specifically describe the required information, and the claimant shall be afforded at least 45 days from receipt of the notice within which to provide the specified information.

Concurrent Care Claim – A concurrent care claim is a claim to extend an ongoing course of treatment provided over a period of time or a number of treatments that was previously approved.

Any request by a claimant to extend the course of treatment beyond the period of time or number of treatments that is a claim involving urgent care will be decided as soon as possible, taking into account the medical exigencies, and the Claims Administrator will notify the claimant of the decision within 24 hours after receiving the claim, provided the claim was made at least 24 hours before the course of treatment ends. Notification of any adverse benefit determination concerning a request to extend the course of treatment shall be subject to the time limits for urgent care, pre-service or post-service claims, whichever applies. In addition, if an ongoing course of treatment will be reduced or terminated before the end of the approved period of time or number of treatments (other than by amendment or termination of the Plan), the Claims Administrator will give the claimant sufficient

8

advance notice to request a review and obtain a decision on appeal before the reduction or termination.

<u>Failure to Follow Procedures</u>

If the claimant contacts a person who normally handles benefit matters for the Claims Administrator to request approval of a pre-service or urgent care claim for a specified individual, medical condition and treatment, but he or she fails to follow the procedures for filing claims established by the Claims Administrator, the claimant will be notified orally (or, at his or her request, in writing) of the failure and the proper procedures. This notice will be given as soon as possible, but no later than five days after the initial contact in the case of a pre-service claim or 24 hours in the case of an urgent care claim.

<u>Appeals</u>

Within 180 days of the date of notice of a claim denial, the claimant may submit a request for review of the denial. The Claims Administrator will notify the claimant of the decision on review within the following time periods:

- For urgent care claims, as soon as possible, but no later than 72 hours after receipt of the request for review.

- For pre-service claims, within a reasonable period of time, but no later than 30 days after receipt of the request for review.

- For post-service claims, within a reasonable period of time, but no later than 60 days after receipt of the request for review.

- For concurrent claims, within the period of time for urgent care claims, pre-service claims or post-service claims, as applicable.

If any group health benefit provides for two appeals of an adverse determination, the notification timeframe for any one of such two appeals is one-half of the otherwise applicable appeal timeframe described.

**Federal Notification Timeframes for ERISA Disability Benefit Claims**

The Claims Administrator will notify the claimant of the decision on a properly filed claim within a reasonable period of time, but not later than 45 days after receipt of the claim by the Plan. This period may be extended by the Plan for up to 30 days if the Claims Administrator notifies the claimant prior to the expiration of the initial 45-day period. The period for making the determination may be extended for up to an additional 30 days if the Claims Administrator notifies the claimant prior to the expiration of the first 30-day extension period. These extensions are available only if the Claims Administrator determines that such an extension is necessary due to matters beyond the control of the Plan and the notification describes the circumstances requiring the extension of time and the date by which the Plan expects to render a decision. The claimant has

9

at least 45 days within which to provide additional information needed to resolve the issue, if such information is requested by the Claims Administrator.

Appeals

Within 180 days of the date of notice of a claim denial, the claimant may submit a request for review of the denial. The Claims Administrator will notify the claimant of the decision on review within a reasonable period of time, but not later than 45 days after receipt of the claimant's request for review. The period for making the determination may be extended for up to an additional 45 days if the Claims Administrator notifies the claimant prior to the expiration of the first 45-day period. The notification will indicate the circumstances requiring the extension of time and the date by which the Plan expects to render a decision.

**Federal Notification Timeframes for Other ERISA Benefit Claims**

If a claim is wholly or partially denied, the Claims Administrator will notify the claimant within a reasonable period of time, but not later than 90 days after receipt of the claim by the Plan, unless special circumstances require an extension for processing the claim. If an extension is required, the Claims Administrator will furnish written notice of the extension, which will not exceed 90 days, to the claimant prior to the termination of the initial 90-day period. The extension notice will indicate the special circumstances and the date by which the Plan expects to render the benefit determination.

Appeals

Within 60 days of the date of notice of a claim denial, the claimant may submit a request for review of the denial. The Claims Administrator will notify the claimant of the decision on review within a reasonable period of time, but not later than 60 days after receipt of the claimant's request for review. The period for making the determination may be extended for up to an additional 60 days if the Claims Administrator notifies the claimant prior to the expiration of the first 60-day period. The notification will indicate the circumstances requiring the extension of time and the date by which the Plan expects to render a decision.

If the Plan uses a committee to review appeals, the benefit determination will be made no later than the date of the meeting of the committee that immediately follows the plan's receipt of a request for review, or if the request for review is filed within 30 days before the date of the meeting, no later than the date of the second meeting following the Plan's receipt of the request for review. If special circumstances require a further extension of time, the determination will be made no later than the third meeting following the receipt of the request for review. The claimant will be notified no later than five days after the benefit determination is made.

**Exhausting Claims and Appeal Procedures**
Claimants may not bring any action at law or in equity to recover benefits in any court or agency before exhaustion of the claims and appeals procedures, nor more than 24 months after a purported claim is incurred unless the Benefit Description for that benefit contains a different limitation.

3462209.4

## Third-Party Claims (Subrogation)

This section applies only to self-funded benefits offered under this Plan.  If this section of the Summary Plan Description conflicts with a subrogation provision of a Benefit Description for a self-funded benefit, the provision in the Benefit Description will apply.

If you or a covered Dependent is injured by another party, that party (or an insurer of that party or you) may be responsible for any health care expenses that may result.  The Plan generally will not cover expenses such as those that arise from the acts of a third party.

However, collecting reimbursement for these expenses from the responsible third party or insurer may take a long time.  In such cases, the Plan may pay benefits to you.  If the Plan does pay or provide benefits for such an injury, the Plan has the right to be reimbursed for those payments from any legally responsible party or insurer, or from you if you receive any payment arising out of the illness or injury.  This is an equitable right of the Plan called "subrogation," and it is an equitable lien against your recovery.  Any recovery that you receive will be held in a constructive trust for the benefit of the Plan.  The Plan's rights are "first dollar" rights – before attorney's fees or other claims.  The Plan is entitled to full payment of benefits paid, even if your recovery is less than the total amount of your loss.

As soon as the Plan pays or provides a Benefit under this Plan, it is subrogated to all rights of recovery that you, your Dependent or beneficiary (individually or collectively, "you") has against any party potentially responsible for paying you due to your injuries or illness, to the full extent of Benefits provided or to be provided by the Plan.  In addition, if you receive any payment from any potentially responsible party as result of illness or injury, either outright or in trust, the Plan has the right to recover from and be reimbursed by you or the trustee all amounts the Plan has paid or will pay as a result of that illness or injury, up to and including the full amount you or the trustee receives from all potentially responsible parties.

You may not prejudice the Plan's subrogation and reimbursement rights and upon request you must fully cooperate with the Plan's efforts to recover Benefits paid.  The Plan may require you to sign documents necessary to protect those rights.  You must notify the Plan within 45 days of the date when any notice is given to any party, including an attorney, of the intention to pursue or investigate a claim to recover damages due to injuries you have sustained.

The Plan is entitled to full reimbursement first from any potentially responsible party payments, even if your recovery is less than the total amount of your loss.  The Plan will not pay attorney fees to any attorney hired by the you to pursue your damage claim.  The Plan is entitled to full recovery regardless of whether any liability for payment is admitted by any potentially responsible party, whether the settlement or judgment you receive identifies the benefits the Plan provided, or whether the recovery funds are designated as "pain and suffering" or "non-economic damages" only.

The term "responsible party" means any party or parties responsible for making any payment to (or holding funds for) a covered person due to a covered person's injuries (including illness) or any insurance coverage, including but not limited to uninsured/underinsured motorist coverage, personal umbrella coverage, med-pay coverage, workers compensation coverage, no-fault automobile coverage, or any first-party insurance coverage applicable.

3462209.4

## Rights Of Participants

As a participant in the Plan, you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA).  ERISA provides that all Plan participants shall be entitled to:

**Receive Information About Your Plan and Benefits**

- Examine, without charge, at the Plan Administrator's office and at other specified locations, such as worksites, all documents governing the Plan, including insurance contracts and a copy of the latest annual report (Form 5500 Series) filed by the Plan (if any) with the U.S. Department of Labor and available at the Public Disclosure Room of the Employee Benefits Security Administration.

- Obtain, upon written request to the Plan Administrator, copies of documents governing the operation of the Plan, including insurance contracts, and copies of the latest annual report (Form 5500 Series) and updated summary plan description.  The Plan Administrator may make a reasonable charge for copies.

- Receive a summary of the Plan's annual financial report.  The Plan Administrator is required by law to furnish each participant with a copy of this summary annual report.

**Continue Group Health Plan Coverage**

Continue health care coverage for yourself, spouse or dependent if there is a loss of coverage under the Plan as a result of a qualifying event.  You or your dependents may have to pay for such coverage.  Review this Summary Plan Description and the documents governing the Plan for the rules governing your COBRA continuation coverage rights.

Reduction or elimination of exclusionary periods of coverage for preexisting conditions under your group health plan, if you have creditable coverage from another plan.  You should be provided a certificate of creditable coverage, free of charge, from your group health plan or health insurance issuer when you lose coverage under the plan, when you become entitled to elect COBRA continuation coverage, when your COBRA continuation coverage ceases, if you request it before losing coverage, or if you request it up to 24 months after losing coverage.  Without evidence of creditable coverage, you may be subject to a preexisting condition exclusion for 12 months (18 months for late enrollees) after your enrollment date in your coverage.

**Prudent Actions by Plan Fiduciaries**

In addition to creating rights for Plan participants, ERISA imposes duties upon the people who are responsible for the operation of the employee benefit plan.  The people who operate your Plan, called "fiduciaries" of the Plan, have a duty to do so prudently and in the interest of you and other Plan participants and beneficiaries.  No one, including your employer or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a welfare benefit or exercising your rights under ERISA.

3462209.4

**Enforce Your Rights**

If your claim for a welfare benefit is denied or ignored, in whole or in part, you have a right to know why this was done, to obtain copies of documents relating to the decision without charge, and to appeal any denial, all within certain time schedules.

Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request a copy of Plan documents or the latest annual report from the Plan and do not receive them within 30 days, you may file suit in a Federal court. In such a case, the court may require the Plan Administrator to provide the materials and pay you up to $110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the Plan Administrator. If you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or Federal court. In addition, if you disagree with the Plan's decision or lack thereof concerning the qualified status of a medical child support order, you may file suit in a Federal court. If it should happen that Plan fiduciaries misuse the Plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a Federal court. The court will decide who should pay court costs and legal fees. If you are successful, the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees, for example, if it finds your claim is frivolous.

**Assistance With Your Questions**

If you have any questions about the Plan, you should contact the Plan Administrator. If you have any questions about this statement or about your rights under ERISA, or if you need assistance in obtaining documents from the Plan Administrator, you should contact the nearest office of the Employee Benefits Security Administration, U.S. Department of Labor, listed in your telephone directory or the Division of Technical Assistance and Inquiries, Employee Benefits Security Administration, U.S. Department of Labor, 200 Constitution Avenue N.W., Washington, D.C. 20210. You may also obtain certain publications about your rights and responsibilities under ERISA by calling the publications hotline of the Employee Benefits Security Administration.

Please note: ERISA does not apply to: Voluntary Accidental Death & Dismemberment coverage; the Section 125 Cafeteria plan (premium payment benefits); and the Dependent Care Flexible Spending Account. Therefore, this statement of ERISA rights does not apply to those benefits.

13

## HIPAA Notice of Privacy Practices

**THIS DOCUMENT SERVES AS YOUR NOTICE OF PRIVACY PRACTICES FOR MEDICAL, DENTAL, PRESCRIPTION DRUG AND HEALTH FLEXIBLE SPENDING ACCOUNT BENEFITS UNDER THE RAYMOND JAMES FINANCIAL, INC. WELFARE PLAN ("PLAN").**

**THIS NOTICE DESCRIBES HOW MEDICAL INFORMATION ABOUT YOU MAY BE USED AND DISCLOSED AND HOW YOU CAN GET ACCESS TO THIS INFORMATION.  PLEASE REVIEW IT CAREFULLY.**

**THIS NOTICE IS EFFECTIVE AS OF [INSERT DATE].**

I.      Why am I getting this notice?

You are receiving this notice because it is required by law under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").  Under HIPAA, you have rights described in this notice.

II.     What is HIPAA and what does it do for me?

HIPAA is a federal law.  One of its primary purposes is to make sure that information about your health is handled with special respect for your privacy.  HIPAA contains numerous safeguards designed to protect your personal health information.

Your health plan is required to maintain the privacy of your protected health information and to abide by the terms of this notice as currently in effect.  However, the practices and policies described in this notice may be changed and the changes can apply to information already held by the Plan at the time of change.  If this notice is revised, a current copy will be sent to your address on file with the Plan.

III.    The following benefit programs offered under the Plan are covered by this notice:

- **Medical**
- **Dental**
- **Prescription Drugs**
- **Health Flexible Spending Account**

If you have any questions about whether you are eligible for one or more benefit programs, contact someone in the Human Resources Department or review your summary plan descriptions.  Collectively, these programs are referred to as "health plan" or "health plans" in this notice.

IV.     What health information is protected?

Under HIPAA, protected health information ("PHI") is information:

- In any form, oral, written, electronic, etc.; and
- Created or received by the health plan; and

14

- That relates to the past, present or future physical or mental health or condition of an individual, the provision of health care services to the individual, or payment for those health care services; and
- That identifies the individual or from which there is a reasonable basis to believe the information could be used to identify the individual.

Health information your employer receives during the course of performing non-health plan functions is not protected health information. For example, health information you submit to your employer to document a leave of absence under the Family and Medical Leave Act is not protected health information. Similarly, health information you submit to your employer to show that you are eligible for disability leave is not protected health information.

V.      Can the Plan use my health information without my authorization?

Yes. The ways your information is used without your authorization and the ways it can be used only with your authorization are both covered in this notice.

VI.     How can the Plan use my health information without my authorization?

The Plan must use information about you in many ways. If you think about how you receive health care and all the things that must happen behind the scenes to get health care for you and your dependents paid for, you will see that your information is used in logical and necessary ways. In each of the areas described below, the Plan is not required to ask for your consent and will not ask for your consent to perform the activities.

A.      Uses of information for enrollment and administration

1.      To obtain coverage. The fact that you and your dependents have enrolled in one or more of our health plans may be considered protected health information. The Plan must collect and transmit your enrollment information to organizations that administer these health plans, so your family can be added to their records and your identification cards can be issued.

2.      To keep track of changes in the coverage status of you and your dependents. The plan must keep your enrollment information and use it throughout the year so it can continue to oversee your enrollment. For example, if your covered son reaches the limiting age under the Plan, the Plan must tell the claims administrators that your son's coverage will end on a particular date.

3.      To administer COBRA. The plan will share your enrollment information with the health plan's COBRA administrator so your COBRA benefits may be properly administered.

B.      Uses of information for payment purposes

1.      To pay for your health care. The Plan will use and disclose your health information in order to process and pay your health claims. Information will be shared with other plans or programs that provide health coverage for you or a dependent so claims can

15

be "coordinated" among the plans; information will be obtained from you and providers so the Plan can apply its terms and determine what it owes and to whom relating to any service received; information will be used to perform utilization review activities, including precertification for certain procedures, concurrent case management and retrospective review to make sure health services are being used appropriately; information will be used to determine an appeal from a decision on a claim; and information will be used by the Plan to seek reimbursement from another party that is liable for claims already paid by the Plan.

2.   To collect your contributions.  The Plan uses your enrollment information to notify your employer to deduct the amount of your contributions from your paychecks or otherwise collect them from you, if applicable.

3.   To help you.  If you contact an individual who is part of the health plan's administration team with a question relating to your coverage or payment for a claim, it is likely that you will disclose some private health information in order to explain your problem.  These individuals, including individuals at a call center, will use this information as necessary to resolve your problem.  Depending on the situation, contact may be made to another party on your behalf.  During these calls, it may be necessary to repeat information you have disclosed.

Your PHI may be discussed with your spouse, parent or other family member if that individual contacts the plan for assistance with an eligibility, coverage or payment issue.  As described in Question XII below, you have the right to request that the Plan not discuss your PHI with these individuals for these purposes.

4.   To collect insurance.  Information about your health care may be used and disclosed to the stop-loss insurance carrier for a claim or premium rating purpose.

5.   To other organizations involved in the administration of the Plan.  The Plan may disclose your health information to any of the administrators or service providers for the health plan.  It is necessary that these organizations be able to obtain your information for treatment, payment and health care operations.

These organizations are called "business associates" of the Plan.  A business associate may create protected health information and may share it with the Plan and/or another business associate of the Plan.

C.   Uses of information for treatment purposes

1.   If you need assistance.  The Plan is permitted to use your private health information to help you obtain treatment.  It may disclose information about you to providers, including doctors, nurses, technicians and hospital personnel involved with taking care of you.  For example, the Plan or one of its business associates might disclose information about your prior prescriptions to a pharmacist to determine if any medicines conflict.

2.   To tell you about special programs.  The Plan may contact you with information about appointment reminders, treatment alternatives or other health-related

16

benefits and services that may be of interest to you.  For example, if you have a particular disease, the Plan may send you information that describes new ways to treat your disease or new medicines that may be right for you.  These communications may also come from the claims payors or administrators under the Plan.

D.     Uses of information for health care operations

1.     To make sure the network is adequate.  The Plan may collect demographic and claims information about participants to make sure its health care options and networks are adequate to serve participants' needs.

2.     Quality control and improvement.  The Plan will collect and analyze member health care use data so the Plan can evaluate and develop existing treatment management and wellness programs, obtain price quotations from insurers and third-party payors, monitor quality of health care delivery, and perform other activities related to the overall operation of the health plan.

3.     Legal and other services.  Your information may be used by the Plan in connection with professional services obtained by the Plan, such as legal services, audit functions, legal compliance (such as FASB 106 calculations) and detection of fraud or abuse.

4.     Customer service.  Your information may be used to conduct any aspect of customer service for you, your dependents and health care providers.

VII.   Are there any other ways the Plan can use my health information without my consent?

Yes.  HIPAA includes a list of situations where the Plan is required to disclose your private health information and a separate list of other situations where the Plan is permitted to disclose such information.

A.     When disclosure is required by law or in accordance with law enforcement efforts, including

- To a law enforcement official in response to a subpoena, court or administrative agency warrant or order; to identify or locate a suspect, fugitive, material witness or missing person; about a victim of a crime, in limited circumstances; about a death the Plan believes may be the result of criminal conduct; about criminal conduct at a hospital; and in an emergency, to report a crime, location of a victim or crime or the identity of a person who committed a crime;
- To an authorized federal official for intelligence, counterintelligence and other national security activities authorized by law;
- If you are an inmate or in custody, to a law enforcement official;
- In response to a discovery request in a civil proceeding;
- In response to a summons issued by a court, grand jury, inspector or administrative body that can require production of information; and
- Pursuant to requirements of a federal, state or local public health authority.

B.     To you

If you or a covered dependent request copies or other access to information about yourself, the Plan may, but is not required to, obtain your consent.

      C.      Other disclosures the Plan may make without your consent - permitted disclosures

There are other special situations where the Plan may use your health information. Mostly, these are for public health purposes. The Plan may disclose PHI to report births and deaths, to prevent or control disease, injury or disability, to report child abuse or neglect, to report reactions to medications or product defects or problems, to notify a person who may have been exposed to a communicable disease or may be at risk of contracting or spreading a disease or condition or to notify a government authority if someone is a victim of abuse, neglect or domestic violence (but only if the victim agrees or the Plan is required or authorized by law).

The Plan may disclose PHI to the government for oversight activities authorized by law, such as audits, investigations, inspections, licensure or disciplinary actions, and other proceedings, actions or activities necessary for monitoring the health care system, government programs, and compliance with civil rights laws.

The Plan may disclose PHI to coroners, medical examiners, and funeral directors for the purpose of identifying a decedent, determining a cause of death, or otherwise as necessary to enable these parties to carry out their duties consistent with applicable law.

The Plan may release PHI to organ procurement organizations to facilitate organ, eye, and tissue donation and transplantation.

In limited circumstances, the Plan may release PHI to the extent permitted by applicable workers' compensation laws or other similar programs.

Finally, if you are member of the armed forces, the Plan may release PHI as required by the military.

VIII.   If the Plan uses or discloses information about me, how much information will be used or disclosed?

The Plan and company employees who have access to PHI will use and/or disclose only the minimum amount of information that is necessary to accomplish the activity at hand. For example, if you call for assistance in getting a bill paid for the surgeon who operated on your back, and you happen to mention to the person taking your call that you are diabetic, your diabetes would not be necessary information relating to your back surgery and would not be mentioned to anyone in connection with working on getting the bill paid unless it became a relevant factor for some reason.

This "minimum necessary" policy does not apply when you or a provider request information, when information disclosure is required by law or when you authorize the disclosure.

IX.     What about other uses?

The Plan must obtain your specific written authorization to use or disclose your protected health information in any way not outlined in this notice. You may revoke your authorization under circumstances when the Plan has not acted upon it.

For example, the Plan will not sell lists of pregnant women to a baby clothing manufacturer without the individual's authorization.

X.      Will information be disclosed to my employer?

Information will not be disclosed to your employer to be used for firing, placement, promotion or other employment-related activities without your authorization.  Keep in mind that your employer may obtain the information from another source outside the health plan.  If you apply for leave under FMLA or request an accommodation for your disability under the ADA, the Plan will not give your protected health information to your employer for this purpose unless you authorize the disclosure in writing.  However, you may still be required to provide the information to your employer.  The health plan documents specify which people within the employer's organization can receive your health information.

The Plan may, however, disclose information to your employer for other purposes relating to administration of the Plan.  For example, the employer may wish to audit the payments made under the Plan.  In addition, health information including claims history which has been summarized to cover all employees or certain groups of employees may be given to your employer so your employer can obtain bids from providers periodically and so it can decide whether or not to change benefits offered under the Plan.  However, through its Plan documents, the employer has agreed to handle your information with all protections required.

XI.     What about state privacy laws?

Many states have special laws that may provide for additional restrictions against disclosure of particularly sensitive health information.  The Plan will comply with any applicable state laws providing for additional restrictions.

XII.    What rights do I have under HIPAA?

You may exercise any of the following rights by contacting the Privacy Officer identified in Question XIII below:

A.      You have the right to ask the Plan to restrict the use and disclosure of your protected health information beyond the restrictions described in this notice.  In most instances, the Plan is not required to agree to your request.  However, if you so request, the Plan is required to restrict the disclosure of your protected health information when the disclosure is to another health plan for purposes of payment or health care operations and the protected health information relates to an item that you have paid out of pocket in full.

B.      You have the right to request in writing that you receive confidential communications of protected health information from the Plan by a method other than the methods normally used (phone, mail, fax, email, etc.) or at another location if you state that you would be endangered if such other methods were not used.  For example, you may request that we only contact you at work by mail.

C.   You have the right to inspect and copy any protected health information maintained by the Plan.  This right does not apply to psychotherapy notes or information compiled in reasonable anticipation of a legal proceeding.  You will receive a response to your request.  If your request is denied, you have the right to have your request reviewed under most circumstances.

D.   You have the right to ask, in writing, that the Plan amend your health information that you believe is incomplete or incorrect.  Your written request must contain a reason that you request the amendment.  You will receive a response to your request.  Your request may be denied by the Plan if the information was not created by the Plan, would not be available for inspection under C above, or if the Plan determines that the information is complete and correct.

E.   You have the right to receive a list of how many times and to whom your protected health information has been disclosed by the Plan during the six years prior to the date of your request.  There are significant exceptions to this rule under federal regulations.

F.   You have the right to receive a paper copy of this notice upon your request.

XIII.   What can I do if I have a complaint about how my health information is used?

The Plan wants to hear from you if you have any questions, concerns or complaints about the privacy of your health information.  Please contact the following office by telephone, mail or e-mail:

**[insert name]**, Privacy Officer
Raymond James Financial, Inc.
880 Carillon Parkway
St. Petersburg, FL 33716
Telephone No.:  (727) 567-1000

You also may file a complaint with the Secretary of Health and Human Services.  No one at your employer will retaliate or take any action against you for filing a complaint.

20

3462209.4

## Additional Information About The Plan

### Amendment and Termination of the Plan

Although Raymond James Financial, Inc. intends to continue this Plan, it has the right to amend, modify or terminate the Plan or any benefit option offered under the Plan at any time.

### Limitations on Rights of Participants

Participation in the Plan does not give you the right to be retained in the service of Raymond James Financial, Inc. or any participating employer, nor does it entitle you to any interest, pension, or benefits other than the benefits specifically provided for in the Plan.

### Plan Name

Raymond James Financial, Inc. Welfare Plan

### Type of Plan

A cafeteria plan and welfare benefit plan providing vision, behavioral health and employee assistance program (EAP) benefits; accidental death and dismemberment (AD&D) insurance benefits; life insurance benefits; long-term disability benefits; business travel accident insurance benefits; long-term care insurance benefits; flexible spending accounts; premium payment benefits; and medical, dental and prescription drug benefits.  The cafeteria plan (premium payment benefits), dependent care flexible spending account and voluntary AD&D coverage are not subject to ERISA.

### Plan Year

April 1 – March 31

### Plan Sponsor and Identification Number of Employer Which Maintains the Plan

Raymond James Financial, Inc. is the Plan Sponsor, and the Identification Number is 59-1517485.

### Plan Number

503

### Type of Administration and Funding

Benefits are administered as specified in the applicable Benefit Descriptions, attached.

The following benefits are self-funded: medical, dental, prescription drug and flexible spending account benefits.  The following benefits are insured: vision, behavioral health and EAP, AD&D, life insurance, long-term disability, long-term care, and business travel accident benefits.

The Plan costs and insurance premiums are paid through contributions by Raymond James Financial, Inc., other participating employers and participating employees.  The Plan Sponsor determines the amounts of contributions to be made.

### Plan Administrator

Raymond James Financial, Inc.
880 Carillon Parkway
St. Petersburg, FL 33716
Telephone No.:  (727) 567-1000

**COBRA Administrator**

Ceridian
3201 34th Street
St. Petersburg, FL 33711

**Agent for Service of Legal Process**

Benefits Manager
Raymond James Financial, Inc.
880 Carillon Parkway
St. Petersburg, FL 33716
Telephone No.:  (727) 567-1000

**Employer Whose Employees are Covered by the Plan**

Raymond James Financial, Inc.
Raymond James & Associates
Planning Corp. of America
Raymond James Financial Services
Raymond James Financial Services Advisors
Eagle Fund Distributors, Inc.
Eagle Asset Management
Eagle Fund Services
Eagle Boston Investment Management
Raymond James Bank
Raymond James Trust NA
Raymond James Tax Credit Funds, Inc.
Raymond James Capital
Raymond James International

3462209.4

Lisa S. Kantor, Esq. SBN 110678
Elizabeth K. Green, Esq. SBN 199634
KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
Tel: (818) 886-2525; Fax: (818) 350-6272

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTORIA D., | CASE NUMBER |
| PLAINTIFF(S) | CV13- 5563 ᴊᴇᴍ |
| v. | |
| CONNECTICUT GENERAL LIFE INSURNCE COMPANY, | **SUMMONS** |
| DEFENDANT(S). | |

TO:    DEFENDANT(S): CONNECTICUT GENERAL LIFE INSURANCE COMPANY

A lawsuit has been filed against you.

Within ___21___ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, Lisa S. Kantor & Elizabeth K. Green ___, whose address is Kantor & Kantor, LLP, 19839 Nordhoff St., Northridge, CA 91324 _____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: August 1, 2013 _____

By: _____ **JULIE PRADO** _____
                Deputy Clerk

                *(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

CV-01A (12/07)                                SUMMONS

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| VICTORIA D | CONNECTICUT GENERAL LIFE INSURANCE COMPANY |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Lisa S Kantor, Esq.; Elizabeth K. Green, Esq. Kantor & Kantor, LLP 19839 Nordhoff St., Northridge, CA 91324; (818)886-2525 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only (Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated or Principal Place of Business in Another State | ☐ 5 | ☑ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☑ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☑ No   ☐ MONEY DEMANDED IN COMPLAINT: $ _____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

29 U.S.C. Section 1132; Failure to pay benefits

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 550 Civil Rights | ☑ 791 Empl. Ret. Inc. Security Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | **PROPERTY RIGHTS** |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE / PENALTY** | ☐ 820 Copyrights |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 610 Agriculture | ☐ 830 Patent |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 840 Trademark |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | **SOCIAL SECURITY** |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | **IMMIGRATION** | ☐ 445 American with Disabilities - Employment | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 892 Economic Stabilization Act | **REAL PROPERTY** | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | | **FEDERAL TAX SUITS** |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | |
| | ☐ 290 All Other Real Property | | | | |

CV13- 5563

FOR OFFICE USE ONLY:   Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

| CV-71 (05/08) | CIVIL COVER SHEET | Page 1 of 2 |
|---|---|---|

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No   ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No   ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or
                               ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
                               ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
                               ☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| LOS ANGELES COUNTY | |

(b)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | CONNECTICUT |

(c)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| LOS ANGELES COUNTY | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved.

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____   Date August 1, 2013

Notice to Counsel/Parties:   The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |